JAMES J. BANKS (SBN 119525)
jbanks@bw-firm.com
ROBERTA LINDSEY SCOTT (SBN 117023)
rlscott@bw-firm.com
BANKS & WATSON
901 F Street, Suite 200
Sacramento, CA 95814-0733
(916) 325-1000
(916) 325-1004 (facsimile)

Attorneys for Plaintiff,
CAMP RICHARDSON RESORT, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMP RICHARDSON RESORT, INC., | Case No.: 2:15-CV-01101-TLN-AC |
| Plaintiff, | **PLAINTIFF CAMP RICHARDSON RESORT, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | Date:       September 10, 2015 |
| Defendant. | Time:       2:00 p.m. |
| | Courtroom:  2, 15th Floor |
| | HONORABLE TROY L. NUNLEY |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................. 1

II. SUMMARY OF THE DISPUTE ................................................. 3

III. STANDARD ON MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ...................................................... 5

IV. THE LAW IMPOSES THE BROADEST POSSIBLE DUTY ON AN INSURER TO DEFEND ITS INSURED ................................................ 6

V. PHILADELPHIA HAS A DUTY TO DEFEND CRR UNDER CGL PART A ............ 7

    A. Coverage A ......................................................... 7

    B. The Underlying Complaint and First Amended Complaint Plainly Allege Property Damage Under Coverage A ...................................... 8

    C. CRR's Alleged Interference with Plaintiffs' Property Rights is an "Occurrence" Under the Policy ...................................... 10

VI. PHILADELPHIA OWES CRR A DEFENSE UNDER THE "PERSONAL AND ADVERTISING INJURY" COVERAGE IN THE CGL POLICY ........... 13

    A. Coverage B ......................................................... 13

    B. The Underlying Complaint and First Amended Complaint Allege Facts Establishing a Duty to Defend Under Coverage B ....................... 14

VII. PHILADELPHIA HAS A DUTY TO DEFEND UNDER THE LIQUOR LIABILITY COVERAGE ................................................ 15

    A. Philadelphia's Liquor Policy Issued to CRR Contains the Following Pertinent Terms ... 15

    B. CRR Has Established That the Claims Against CRR Arising from the Selling or Furnishing of Alcoholic Beverages are Potentially Covered ....................... 15

VIII. PHILADELPHIA'S MOTION TO DISMISS THE CLAIM FOR BAD FAITH SHOULD BE DENIED ................................................ 17

IX. CONCLUSION .............................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Salahutdin*
  815 F. Supp. 1309 (N.D. Cal. 1992) ................................................................. 12

*Allstate Ins. Co. v. Vavasour*
  797 F. Supp. 785 (N.D. Cal. 1992) ............................................................ passim

*Amadeo v. Principal Mutual Life Insurance Co.*
  290 F. 3d 1152 (9th Cir. 2002) ........................................................................ 19

*Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*
  302 F. 3d 1049 (9th Cir. 2002) ..................................................................... 6, 11

*Armitage v. Decker*
  218 Cal. App. 3d 887 (1990) ........................................................................... 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .......................................................................................... 5

*Bailey v. State Farm Ins. Co.*
  810 F. Supp. 267 (N.D. Cal. 1992) .................................................................. 13

*Bell Atlantic Corporation v. Twombly*
  550 U.S. 544 (2007) .......................................................................................... 5

*Blue Ridge Ins. Co. v. Stanewich*
  142 F. 3d 1145 (9th Cir. 1998) ....................................................................... 12

*Buckley v. Gallo Sales Co.*
  949 F. Supp. 737 (N.D. Cal. 1996) ................................................................... 5

*Chateau Chamberay Homeowners Association v. Associated International Insurance Co.*
  90 Cal. App. 4th 335 (2001) ........................................................................... 18

*Chu v. Canadian Indemnity Co.*
  224 Cal. App. 3d 86 (1990) ............................................................................. 11

*County of San Bernardino v. Pacific Indemnity Co.*
  56 Cal. App. 4th 666 (1997) .............................................................................. 7

*Delgado v. Interinsurance Exchange of Automobile Club of Southern California*
  47 Cal. 4th 302 (2009) ..................................................................................... 10

*Dufor v. Henry J. Kaiser Co.*
  215 Cal. App. 2d 26 (1963) ............................................................................. 12

*Fibreboard Corp. v. Hartford Accident & Indemnity Co.*
  16 Cal. App. 4th 492 (1993) ........................................................................... 13

*Fire Ins. Exchange v. Superior Court*
  181 Cal. App. 4th 388 (2010) ......................................................................... 12

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

*Foman v. Davis*
    371 U.S. 178 (1962) ........................................................................ 6

*Garcia v. Calfarm Ins. Co.*
    12 Cal. App. 4th 999 (1992) ........................................................ 7

*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*
    51 Cal. 2d 558 (1959) ................................................................ 11

*Gonzalez v. Allstate Ins. Co.*
    2000 U. S. Dist. LEXIS 13921 ................................................... 12

*Gray v. Zurich Ins. Co.*
    65 Cal. 2d 263 `(1966) ..................................................... 1, 7, 17

*Greenhut v. Wooden*
    129 Cal. App. 3d 64 (1982) ....................................................... 11

*Guebara v. Allstate Insurance Co.*
    237 F. 3d 987 (9th Cir. 2001) ................................................... 18

*Hogan v. Midland Nat'l Ins. Co.*
    3 Cal. 3d 553 (1970) .......................................................... 10, 11

*Intake Water Co. v. Yellowstone River Compact Commission*
    769 F. 2d 568 (9th Cir. 1985) ..................................................... 5

*Maryland Cas. Co. v. Nat'l Am. Ins. Co.*
    48 Cal. App. 4th 1822 (1996) ................................................... 11

*McGranahan v. Ins. Corp. of NY*
    544 F. Supp. 2d 1052 (E.D. Cal. 2008) .................................... 11

*Medill v. Westport Ins. Corp.*
    143 Cal. App. 4th 819 (2006) ..................................................... 7

*Merced Mutual Insurance Company v. Mendez*
    213 Cal. App. 3d 41 (1989) ....................................................... 10

*Meyer v. Pacific Employers Insurance Company*
    233 Cal. App. 2d 321 (1965) ..................................................... 10

*Montrose Chem. Corp. v. Superior Court*
    6 Cal. 4th 287 (1993) ...................................................... passim

*Nordby Construction, Inc. v. American Safety Indemnity Co.*
    2015 U.S. Dist. LEXIS 34513 ............................................. 18, 19

*Osborne Dev. Corp. v. First Specialty Ins. Corp.*
    2011 U.S. Dist. LEXIS 50448 ................................................... 12

*Shroyer v. New Cingular Wireless Servs.*
    622 F. 3d 1035 (9th Cir. 2010) ................................................... 5

*Signal Companies, Inc. v. Harbor Ins. Co.*
    27 Cal. 3d 359 (1980) ................................................................ 6

*State Farm Fire & Casualty Co. v. Superior Court*
    164 Cal. App. 4th 317 (2008) .......................................................... 10

*Stonelight Tile, Inc. v. California Ins. Guarantee Assn.*
    150 Cal. App. 4th 19 (2007) ........................................................... 14

*Warner v. Fire Ins. Exch.*
    230 Cal. App. 3d 1029 (1991) ......................................................... 8, 9

*Zelda, Inc. v. Northland Insurance Co.*
    56 Cal. App. 4th 1252 (1997) ......................................................... 15

**<u>Statutes</u>**

Bus. & Prof. Code, § 25602 ................................................................. 2, 3, 16

**<u>Rules</u>**

Fed. R. Civ. Proc., rule 15 ..................................................................... 5

Fed. Rule. Civ. P., rule 12(b)(6) ............................................................. passim

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

# I. INTRODUCTION.

Philadelphia Indemnity Insurance Company ("Philadelphia") faces an impossible task with this Rule 12(b)(6) motion. An insurer must defend its insured so long as the complaint at issue raises the possibility that the insured may be liable for the losses covered by its policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993). The California Supreme Court put the issue starkly: Insurers are relieved of their duty to defend only if "the complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*." [Italics in original.] *Montrose*, 6 Cal. 4th at 300, quoting from *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276, fn. 15 (1966). Philadelphia fails to meet this heavy burden.

Philadelphia's excuses for abandoning its insured are easily put. Philadelphia disclaims an obligation to defend and indemnify under Coverage A of its policy, arguing that the underlying complaint ("UC") and first amended complaint ("FAC")[1] did not allege interference with a property right but, instead, mere interference with an easement. Philadelphia also asserts that the conduct alleged in the complaint is not an "accident" and thus not an "occurrence." Philadelphia ignores the numerous allegations in the UC and FAC in which the JBPOA plaintiffs plainly allege that they *own* a portion of Jameson Beach Road. Philadelphia ignores extrinsic evidence which its insured presented to it, notably a declaration by a licensed surveyor the plaintiffs engaged, reaching the same conclusion.

Philadelphia's argument that the UC and FAC allege only purposeful, non-accidental conduct fails because the complaint does not allege that the actions CRR took – the kiosk placement, parking space striping and tree removal – occurred when CRR was aware of the JBPOA plaintiffs' competing claim to the Jameson Beach roadway. That was first raised in the JBPOA Action. To the extent CRR unwittingly trespassed and interfered with the JBPOA plaintiffs' property rights, that conduct is accidental. See, e.g., *Allstate Ins. Co. v. Vavasour*, 797 F. Supp. 785 (N.D. Cal. 1992).

Philadelphia's argument in support of its refusal to defend under Coverage B may be charitably described as a "heads I win, tails you lose" exercise in syllogism. Essentially, Philadelphia argues that

---

[1] Copies of the complaint ("UC") and first amended complaint ("FAC") in the underlying action are attached to the complaint initiating this action as Exhibits B and C respectively. The underlying action is referred to herein as the "JBPOA Action" and the plaintiffs therein are denominated "JBPOA plaintiffs" to avoid confusion with the plaintiff in this action.

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

either the United States Forest Service ("USFS") or the JBPOA plaintiffs will ultimately be determined to be the owner of the disputed 25-foot strip of land. If it is the former, then the JBPOA plaintiffs do not have a cognizable property interest. If it is the latter, then the alleged interference is not by or at the request of a "property owner." Although it is tempting for an insurer to forecast a litigation outcome to avoid coverage, that approach places the cart squarely before the horse. The simple fact is that the complaint alleges that the JBPOA plaintiffs and the USFS claim to be owners of the disputed 25-foot strip of land. Thus, the complaint *plainly* alleges interference with a property right by or on behalf of an owner.

Philadelphia's basis for disclaiming coverage under its Liquor Liability Form likewise places the cart before the horse. Philadelphia argues it owes no duty to defend under its Liquor Liability Form because there is no potential for liability. Philadelphia cites to no law in support of its argument. One assumes it is relying on California Business and Professions Code section 25602(b) which generally absolves persons who sell, furnish or give alcoholic beverages to habitual drunkards or obviously intoxicated persons from liability to any injured person for injuries inflicted as a result of intoxication. Section 25602.1 excepts from section 25602(b), liability resulting from the giving, sale or furnishing of alcoholic beverages to any intoxicated minor. Alternatively, Philadelphia denies that the complaint alleges damages by reason of the selling, serving or furnishing of alcoholic beverages. (Memorandum in Support, 14:15-15:14.)

Philadelphia's attempts to forecast the final outcome of the underlying litigation are unavailing. The JBPOA plaintiffs in the underlying case complained of drunken patrons trespassing on their property and docks, causing them property damage. It is doubtful Business and Professions Code section 25602(b) even applies here, as the plaintiffs do not aver any claims for bodily injury. But even if section 25602(b) does apply, Philadelphia cannot escape its defense duty in a 12(b)(6) motion. Philadelphia cannot successfully claim at this point with any degree of certainty that none of the drunken trespassers were under 21 years of age. Likewise, Philadelphia cannot conclusively state that the trier of fact will find that the cause of the patrons' drunken conduct was something other than the selling, serving or providing of alcoholic beverages. Philadelphia has not shown that the underlying complaint cannot, under any conceivable theory, raise a single issue which would bring it within the policy.

1  *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). Its motion to dismiss the
2  declaratory relief and breach of contract claims should be denied.

3      Several factors indicate Philadelphia acted in bad faith. These include its wholesale denial of
4  policy benefits, efforts to distance itself from its defense obligation knowing that the underlying
5  pleadings have not been solidified, and its willingness to misuse an affirmative defense[2] available to
6  CRR in the underlying claims as a shield to its duty to defend CRR. Whether an insurer acts reasonably
7  or not is a question of fact, which should not be adjudicated at the pleadings stage. Philadelphia's
8  motion to dismiss the bad faith claim should also be denied.

9  **II.    SUMMARY OF THE DISPUTE.**

10      CRR is a year-round resort on the shores of Lake Tahoe, including a marina, hotel, ice cream
11  parlor, restaurant, cabins and campground. It is owned by the United States Forest Service ("USFS")
12  and operated by CRR under Special Use Permits. A subdivision of lakeside homes, the Jameson Beach
13  Subdivision, lies to the east of CRR. A partially-paved 25-foot strip of land on CRR's eastern boundary
14  provides access from State Highway 89 to the main Camp facility, the marina, and to the public beach.
15  It is identified as "Jameson Beach Road." CRR, at the direction of the USFS, provides public parking
16  spaces along Jameson Beach Road and controls the flow of traffic from Highway 89 into the Camp via a
17  traffic kiosk. (UC, ¶ 30; FAC, ¶ 34.) The Jameson Beach Subdivision property owners and guests use
18  the roadway for ingress and egress. (UC, ¶ 26; FAC, ¶ 30.)

19      In 2013, the Jameson Beach Property Owners' Association and two of its members sued CRR
20  and its general manager, Kris Knox, among others, in litigation styled *Jameson Beach Property Owners'*
21  *Association, an unincorporated association, et al. v. The United States of America, et al.*, in this court,
22  no. 2:13-cv-01025-MCE-AC (the "JBPOA Action").

23      The averments against CRR complain about its operation of the Camp and its use of Jameson
24  Beach Road. The JBPOA plaintiffs claim alternatively a fee interest or a usage interest in the 25-foot

25

---

26  [2] California Business and Professions Code section 25602(b) might insulate CRR in the underlying complaint from the
    plaintiffs' claims arising from the serving or furnishing of alcoholic beverages. It provides: "No person who sells, furnishes,
27  gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall
    be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of
28  intoxication by the consumer of such alcoholic beverage."

strip of land. The plaintiffs' fee interest claim is pled *ad nauseam* in the underlying JBPOA complaint ("UC") and first amended complaint ("FAC"). (See UC, ¶¶ 8-10, 21, 23, 57, 101, 114, 123 and FAC, ¶¶ 9, 25, 70, 72-74, 79, 80.)

The JBPOA plaintiffs allege CRR interfered with their property interests and their use and enjoyment of the 25-foot strip of land. The pleadings accuse CRR of cutting down trees within the strip, of negligently erecting and maintaining the traffic control kiosk and chalking parking spaces (FAC, ¶¶ 118-122). The JBPOA plaintiffs complain CRR obtained too many alcohol beverage permits (UC, ¶ 66; FAC, ¶ 67) and claim damages/injury from drunken patrons (FAC, ¶¶ 134, 137), loud music (UC, ¶ 64; FAC, ¶ 66, 130, 134) and open trash cans (FAC, ¶ 89). Plaintiffs claim these acts interfere with their property rights.

The original complaint asserted claims for negligence, negligent infliction of emotional distress, nuisance, trespass, violation of unfair competition laws, intentional infliction of emotional distress, violations of equal protection and due process, and unjust enrichment. The USFS and El Dorado County successfully moved to dismiss the complaint and the JBPOA plaintiffs filed the FAC. (Docket nos. 29, 10 and 136.) The FAC states claims for negligence and negligent and intentional infliction of emotional distress, quiet title, interference with easement, partition, ejectment, conversion, nuisance, trespass, violation of unfair competition laws, and unjust enrichment.

CRR successfully moved to dismiss the FAC (Docket no. 138) and the JBPOA plaintiffs were given leave to file a second amended complaint (Docket no. 168). Plaintiffs have not filed an amended pleading. The parties were ordered to participate in two settlement conferences in November 2014 and January 2015. (Docket in JBPOA nos. 179, 185 and 186.) On November 7, 2014, the court stayed the JBPOA action along with the related case pending settlement negotiations. (Docket no. 178.) The court thereafter continued the stay by order(s) dated March 3, 2015 (Docket no. 190) and then to September 18, 2015 (Docket no. 193). The parties continue with ongoing settlement negotiations. No discovery has been undertaken in the JBPOA Action.

Philadelphia insured CRR from May 13, 2013 to May 13, 2014 under the CGL policy for which CRR paid an $87,000 premium (Exhibit A, CRR Phil 003). CRR tendered defense of the JBPOA Action to Philadelphia sometime in April 2014, September 8, 2014 (Exhibit F) and again on October 15,

1    2014 (Exhibit G). By letters dated May 30, 2014, September 8, 2014 and finally December 29, 2014

2    (Exhibit J), Philadelphia disclaimed a defense and indemnity. Left with no option and no defense,

3    despite its payment of a hefty premium, CRR initiated this action on May 20, 2015.

4    **III.**    **STANDARD ON MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL**
5           **PROCEDURE 12(b)(6).**

6    Rule 12(b)(6) provides that parties may assert by motion a defense based on "failure to state a

7    claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss all or part of a

8    complaint under Rule 12(b)(6) is only appropriate when the complaint fails to allege either (a) a

9    cognizable legal theory or (b) sufficient facts under a cognizable legal theory. *Shroyer v. New Cingular*

10    *Wireless Servs.*, 622 F. 3d 1035, 1041 (9th Cir. 2010).

11    In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court explained that "once a

12    claim has been stated adequately, it may be supported by showing any set of facts consistent with the

13    allegations in the complaint." *Id.*, at 563. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court

14    elaborated on that test: To survive a motion to dismiss, a complaint must contain sufficient factual

15    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 663 (citation

16    omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

17    to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

18    U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

19    than a sheer possibility that a defendant has acted unlawfully." *Id.*

20    In a Rule 12(b)(6) motion, the court must "accept as true the factual allegations of the complaint

21    and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most

22    favorable to the plaintiff." *Buckley v. Gallo Sales Co.*, 949 F. Supp. 737, 740-741 (N.D. Cal. 1996).

23    Dismissal should not be granted unless "'it appears to a certainty that the plaintiff can prove no set of

24    facts in support of his claim that would entitle him to relief.'" *Buckley, supra,* at p. 741, citing *Intake*

25    *Water Co. v. Yellowstone River Compact Commission*, 769 F. 2d 568, 569 (9th Cir. 1985).

26    If a motion to dismiss is granted, the plaintiff should have leave to amend. Federal Rules of

27    Civil Procedure, rule 15(a)(2), provides that a trial court shall grant leave to amend freely "when justice

28    so requires." The Supreme Court has observed that mandate "is to be heeded." *Foman v. Davis*, 371

1  U.S. 178, 182 (1962). To deny leave to amend would constitute an abuse of discretion, particularly here
2  where this is CRR's initial pleading.

3  **IV.  THE LAW IMPOSES THE BROADEST POSSIBLE DUTY ON AN INSURER TO
        DEFEND ITS INSURED.**
4

5       An insurer has a very broad duty to defend its insured under California law. An insured is
6  entitled to a defense if the underlying complaint alleges an insured's liability for damages potentially
7  covered under the policy, or if the complaint might be amended to give rise to a liability that could be
8  covered under the policy. *Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*, 302 F. 3d 1049, 1054 (9th
9  Cir. 2002), citing *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993). "Once the
10 insured has established potential liability by reference to the factual allegations of the complaint, the
11 terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must
12 assume its duty to defend unless it can *conclusively* refute that potential." [Italics added.] *Montrose*
13 *Chem. Corp. v. Superior Court*, 6 Cal. 4th at 299. In determining whether an insurer owes its insured a
14 duty to defend, "California courts have been consistently solicitous of the insureds' expectations on this
15 score." *Id.*, at 295-296. Any doubt as to whether the facts establish the existence of a duty to defend
16 must be resolved in the insured's favor. *Id.*, at 299-300. Imposition of an immediate duty to defend is
17 necessary to afford the insured the full protection of a defense. Once the insured establishes the
18 potential of coverage, the insurer must defend the suit until it conclusively refutes such potential.
19 *Montrose, supra*, 6 Cal. 4th at 295, 300 citing to *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal. 3d
20 359, 367 (1980).

21      The determination of whether the insurer owes a duty to defend begins by comparing the
22 allegations of the complaint against the terms of the policy. *Montrose, supra*, 6 Cal. 4th at 295. Facts
23 extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim
24 may be covered. *Id.* The insured must set forth the existence of a *potential for coverage*, while the
25 insurer must establish *the absence* of any such *potential*. In other words, the insured need only show
26 that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. *Montrose*,
27 *supra*, 6 Cal. 4th at 300. The only way the insurer can avoid the duty to defend is "if the third party
28 complaint *can by no conceivable theory raise a single issue which could bring it within the policy*

coverage." *Montrose, supra*, 6 Cal. 4th at 300, quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 fn. 15 (1996), italics added by *Montrose*; *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 828 (2006).

An insurer cannot circumscribe its duty to defend by claiming that the evidentiary or legal support for a cause of action is flawed and subject to a defense. To permit an insurer to do so places the cart before the horse because it allows the insurer to refuse to defend a cause of action that, as pled, could give rise to a covered claim. Instead, the insurer must assist its insured, raise those affirmative defenses and defeat the action. *Allstate Ins. Co. v. Vavasour*, 797 F. Supp. 785, 789 (N.D. Cal. 1992); *County of San Bernardino v. Pacific Indemnity Co.*, 56 Cal. App. 4th 666, 686-687 (1997); *Garcia v. Calfarm Ins. Co.*, 12 Cal. App. 4th 999, 1005-1007 (1992) [evidence that claimant's decedent was insured's employee not relevant to duty to defend under policy containing employee exclusions once claimant's amended complaint to allege that decedent was an independent contractor].

Against this backdrop, Philadelphia's motion centers on whether a duty to defend may be disclaimed (1) under Coverage A because the complaint only alleges purposeful conduct and because the complaint does not allege physical injury to tangible property, but instead interference with an easement right; (2) whether a duty to defend may be disclaimed under Coverage B because the underlying complaint fails to allege an invasion committed by or on behalf of an owner, landlord or lessor; and (3) whether a duty to defend may be disclaimed under the liquor liability coverage because the complaint does not allege injury by reason of the selling, serving or furnishing of alcoholic beverages. Each is easily refuted.

## V.   PHILADELPHIA HAS A DUTY TO DEFEND CRR UNDER CGL PART A.

### A.   Coverage A.

Philadelphia's policy issued to CRR contains the following pertinent terms:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . . we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; . . .

SECTION V – DEFINITIONS

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . .

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. See Exhibit A to Complaint, CRR PHIL 158 and CRR PHIL 171-172.

## B. The Underlying Complaint and First Amended Complaint Plainly Allege Property Damage Under Coverage A.

The underlying action alleges that CRR deprived the JBPOA plaintiffs of ownership or use of a 25-foot strip of the roadway that connects their subdivision to Highway 89, which plaintiffs allege they own. UC, ¶¶ 30, 31, 32, 50, 51, 75, 79, 85, 96, 98, 108, 115 and 128. This allegation constitutes "property damage" under Section 17(b) of the policy. Philadelphia counters that the complaint alleges only interference with an easement, which is not "tangible property," and thus there is no obligation to defend and indemnify under Coverage A. Philadelphia's Memorandum in Support of its Motion to Dismiss ("Defendant's Memo") 5:19-20; Complaint, Exhibit E, at p. 7.) Philadelphia reads the UC and FAC much too narrowly.

Real property is tangible property. *Warner v. Fire Ins. Exch.*, 230 Cal. App. 3d 1029, 1034 (1991) ["'tangible property' means 'property (as real estate) having physical substance apparent to the senses"]. The UC and FAC allege that CRR deprived the JBPOA plaintiffs of the use of real property that they own.

The UC clearly alleges fee ownership of the roadway: "The footprint of the [Jameson Beach] Subdivision, inclusive of the fee interest extending from the subdivision from the Subdivision to Highway 89 . . . ." UC, Exhibit B to Complaint, ¶ 21. "[T]he Association and Owners own the Association Roadway . . . ." *Id.*, at ¶ 57. "Plaintiffs own the Association Roadway." *Id.*, at ¶ 123. "In

order to maximize revenue, [CRR] relocated the parking enforcement . . . . This was created to divert drivers to seasonal parking on unimproved land within the association roadway that was transformed into parking spaces along the east side and for the length of Jameson Beach Road." *Id.*, ¶ 30.

The FAC is more explicit. "Members of the Association own real property in fee simple identified on the Record of Survey, October 5, 2011, Document No. 2011-0046271, and on the 1960 Assessor's Parcel Map number 32:11 (sic), and on 32:13 (Exhibit "1" attached hereto and incorporated herein by this reference.)" (Exhibit C to FAC, ¶ 9; Exhibit C to FAC, pp. 35-38.)

At paragraphs 72-74 of the FAC (quiet title claim), the JBPOA plaintiffs aver in detail their claim to fee ownership of the 25-foot strip connecting the Jameson Beach Tract to Highway 89. Further assertions of fee ownership are too numerous to set out in full (e.g., ¶ 9 ("own in fee simple"), ¶ 25 ("inclusive of the fee interest"), ¶ 70(i) ("inclusive of the fee interest"), ¶ 72 ("owned an interest in real property", ¶ 74 ("hold fee title to the JB Tract Land"), ¶¶ 78, 79 ("Plaintiffs are the owner in fee simple . . ." ¶ 140 ("actual interference with their fee interest.")

CRR also furnished extrinsic evidence to Philadelphia, including the declaration of licensed surveyor, Jeff Turner, in support of the JBPOA plaintiffs' Motion to Amend the First Amended Complaint ("Turner Declaration.") (JBPOA Docket no. 173.) The Turner Declaration asserts that the 25-foot strip of land which the JBPOA plaintiffs claim fee ownership to, is part of the roadway, and that the parking spaces CRR allegedly installed are upon the portion of the roadway the JBPOA plaintiffs claim to own. (Complaint, Exhibit I, Turner Declaration, ¶ 23.) The Turner Declaration concludes:

> I concluded that the 25' strip of ground running from Hwy 89 to Jameson Beach Tract, was owned in fee by Ralph Jameson and any successors in his title. The 25' strip of ground was expressly not owned by A.L. and Cora B. Richardson (predecessors in title to the USFS). In fact, it was specifically excepted from their grant deed, (Exhibit "E" incorporated by this reference), by Comstock/Jameson (as illustrated on the 1946 ROS), and therefore never owned by the United States Forest (sic). I further conclude that when Jameson took fee title to what would become the Jameson Beach Tract, he also took ownership in the fee of the 25' strip of ground from the Hwy 89 to the Jameson Beach Tract.

Complaint, Exhibit I, Turner Declaration, ¶ 9.

The averments in the JBPOA Action and statements in the Turner declaration are more than sufficient to establish the potential that CRR might be found liable for "property damage" as defined in the policy. *Montrose, supra,* 302-303.

**C.**    **CRR's Alleged Interference with Plaintiffs' Property Rights is an "Occurrence" Under the Policy.**

Under the policy, an "Occurrence' means an accident . . . ." The term "accident" is not defined in the policy.    Under California law, an accident is "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 559 (1970).    In *Delgado v. Interinsurance Exchange of Automobile Club of Southern California*, 47 Cal. 4th 302 (2009), the court noted that an all-inclusive definition of the word accident is elusive (*Id.*, at 309), but had no problem stating what is not an accident: "[A]n injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor. (Citations.)" *Id.*, at 311-312.    The key word in this formulation is "all," which Philadelphia wholly ignores.

"[C]overage is not always precluded merely because the insured acted intentionally and the [claimant] was injured." *Merced Mutual Insurance Company v. Mendez*, 213 Cal. App. 3d 41, 50 (1989).    Even if the insured acted intentionally, an accident may be found to exist where "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Id.* That is to say, "an 'accident' exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." *Id.*

Thus, coverage was available for a young man who in horseplay attempted to throw a companion into a swimming pool, but failed to achieve the requisite distance:

> Lint [ ] threw Wright at the pool without expecting that Wright would land on the cement step . . . . [T]he act directly responsible for Wright's injury, throwing too softly so as to miss the water, was an unforeseen or undesigned happening or consequence and was thus fortuitous. [Citation.] The event here was an accident because not all of the acts, the manner in which they were done, and the objective accomplished transpired exactly as Lint intended. [Citations.]

*State Farm Fire & Casualty Co. v. Superior Court*, 164 Cal. App. 4th 317, 328-329 (2008).    In *Meyer v. Pacific Employers Insurance Company*, 233 Cal. App. 2d 321, 327 (1965), there was coverage for an insured well-digger whose activity caused vibration injury to buildings on adjacent property.    ""[T]hat an act which causes an injury is intentional does not take the consequence of that act outside the coverage of a policy which excludes damage unless caused by accident for if the consequence that is the damage or injury is not intentional and is unexpected it is accidental in character." *Id.*    The Supreme

Court held in Hogan that damages are accidental if caused by intentional but innocent conduct with unforeseeable or unexpected results. *Hogan, supra*, at 559-560 [milling lumber on a machine that undersized product held to be an accident]; *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal. 2d 558, 563-564 (1959)) [failures of doors, which had been installed with latent defects and which caused property damage, were "accidents" covered within the policy]; *Maryland Cas. Co. v. Nat'l Am. Ins. Co.*, 48 Cal. App. 4th 1822, 1831-1832 (1996) [complaint against insured contractor alleging defective construction work that caused damage established a prima facie case of coverage for the contractor].

In the Eastern District, the court held that installing moldy drywall could constitute an "accident" under a CGL policy because the intentional act at issue was not the fact of hanging any sheetrock, but rather whether the insured intended to hang wet and moldy sheetrock. *McGranahan v. Ins. Corp. of NY*, 544 F. Supp. 2d 1052, 1059 (E.D. Cal. 2008). In dealing with the same issue, the Ninth Circuit stated of injuries caused by the incorporation of defective circuit boards, "when the injury [or property damage] is an unexpected or unintended consequence of the insured's conduct, it may be characterized as an accident for which coverage exists." *Anthem Elecs., Inc. v. Pac. Emplrs. Ins. Co., supra*, 302 F. 3d 1049, 1055 (9th Cir. 2002), citing *Chu v. Canadian Indemnity Co.*, 224 Cal. App. 3d 86, 96 (1990)."

In the JBPOA Action, the "unexpected, undesigned, and unforeseen" dominated the course of events: The USFS gave CRR a license (FAC ¶ 83) to use and occupy (FAC ¶ 130(C)) land that the JBPOA plaintiffs claim they own. UC ¶¶ 21, 57, 123. CRR anticipates that Philadelphia will cite cases (which are legion) that a mistake of fact or law does not morph intentional conduct into an accident. Such cases are inapposite here. The alleged mistake of fact and law was made by the USFS, not by CRR. Once CRR accepted the license, it was estopped to deny the USFS' claim of title. *Greenhut v. Wooden*, 129 Cal. App. 3d 64, 68 (1982); ["[T]he tenant in possession is estopped from denying the landlord's title as it existed at the outset of the relationship."]

The Northern District in *Allstate Ins. Co. v. Vavasour*, 797 F. Supp. 785 (N.D. Cal. 1992), found coverage in an analogous situation. In that case, the Vavasours and the Carrolls owned adjoining properties. No fences or other markers demarcated the property line between their properties. The Vavasours used an unpaved area along the boundary line on a daily basis for automobile ingress and

egress. Carroll erected fence posts along what he claimed to be the boundary of his lot. The fence posts sliced eight inches in width from the Vavasours' driveway, rendering it unsafe. Carroll, like the JBPOA plaintiffs, sued for trespass. The Vavasours (like CRR) tendered the trespass claim to their insurer, Allstate. Allstate disclaimed coverage, claiming the conduct alleged in the underlying action was intentional and did not constitute an "accident" triggering a duty to defend and indemnify. In a careful analysis, the Northern District found the alleged conduct to be accidental as a consequence of the Vavasours' routine use of the driveway over period of years:

> There is no allegation that during the course of such use, the Vavasours had any inkling that their driveway did not lie entirely on their own property. In other words, the only act the Vavasours intended may have been to drive in and out of their own driveway, and not to drive on their neighbor's property.

*Allstate v. Vavasour*, *supra*, at 788.

Thus, the court concluded that the Vavasours' conduct in committing the alleged trespass may not have been inherently wrongful and, indeed, may have been devoid of intent or even knowledge. The resulting trespass was accidental. In so holding, the court cited to authorities, which in turn held that an individual may be liable for trespass only for conduct that is negligent, reckless or intentional, or the product of ultra-hazardous activity. *Id.*, at 788, citing *Armitage v. Decker*, 218 Cal. App. 3d 887, 906 (1990); *Dufor v. Henry J. Kaiser Co.*, 215 Cal. App. 2d 26, 30 (1963).[3]

---

[3] Although Vavasour has been limited in later cases, it remains good law. Review of the cases that question its holding shows that *Vavasour's* facts and logic are closest to those in this case. *Blue Ridge Ins. Co. v. Stanewich*, 142 F. 3d 1145, 1149 (9th Cir. 1998) distinguishes *Vavasour*. The "occurrence" there involved a criminal act of burglary, torture and attempted robbery. As noted, "such acts, by any stretch of the imagination, cannot be called accidental." 142 F.3d at 1149. *Osborne Dev. Corp. v. First Specialty Ins. Corp.*, 2011 U.S. Dist. LEXIS 50448 *22, fn. 5 and *Gonzalez v. Allstate Ins. Co.*, 2000 U. S. Dist. LEXIS 13921 *21-22 and fn.8 note that *Vavasour* is frequently criticized and distinguished. *Gonzalez* is readily distinguishable as it involved a premeditated intentional act (cutting a sewer line) that rendered the neighbors' property uninhabitable. 2000 U. S. Dist. LEXIS 13921 *5. The fact pattern is irreconcilably different from here where CRR was operating a camp in conformity with a USFS license. *Osborne* is distinguishable but for a different reason. *Osborne* reiterated that where an insured intends all of the acts that result in the third party's injury, there is no accident. Only when some "unexpected, independent, and unforeseen happening" occurs in connection with the insured's intentional conduct can the injury-producing event be deemed an accident. It concluded there was no occurrence because a developer "accomplished its desired construction objectives as it intended." 2011 U.S. Lexis 50448 *22. Here, CRR intentionally erected the kiosk and marked parking spaces as directed by the USFS. However, it was completely unexpected and unforeseeable that the USFS would, as alleged in the UC and FAC, license to CRR property that it allegedly did not own. Separately, CRR's conduct in installing the kiosk and marking parking spaces, etc., is not what caused the JBPOA plaintiffs' complaints. The independent happening was the upsurge in public usage of the Camp. UC, ¶ 32; FAC, ¶ 36. The unintended consequences were the traffic, congestion and delays complained of.

*Fire Ins. Exchange v. Superior Court*, 181 Cal. App. 4th 388, 394 (2010), declined to follow *Vavasour* because the issue in that and two other cases cited by that court, *Allstate Ins. Co. v. Salahutdin*, 815 F. Supp. 1309 (N.D. Cal. 1992) and *Bailey v.*

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

The JBPOA plaintiffs do not allege that, prior to the complained of acts in the complaint – the placement of the traffic kiosk, the striping of the east side of the Jameson Beach roadway for parking, and the removal of trees – that the plaintiffs put CRR on notice that they claimed an ownership interest in the affected land.  Indeed, it does not appear that the plaintiffs claimed any such ownership interests until perhaps the filing of the underlying litigation in 2013 and later in 2014 in the Turner declaration.  The complained of acts obviously occurred before then.  CRR undertook the complained of actions without knowledge that it may be committing a trespass.  Like *Vavasour*, CRR's alleged trespass is "accidental" and an occurrence under the policy.

## VI.   PHILADELPHIA OWES CRR A DEFENSE UNDER THE "PERSONAL AND ADVERTISING INJURY" COVERAGE IN THE CGL POLICY.

### A.   Coverage B.

Coverage B of the policy contains the following pertinent terms:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.  Insuring Agreement

a. We will pay those sums that the insured becomes a big legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

SECTION V—DEFINITIONS

14. Personal and advertising injury means injury . . . arising out of one or more of the following offenses.

. . .

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

The conduct particularized in 14(c), above, is expressed generically and is "construed broadly to encompass all specific torts which reasonably could fall within the general category." *Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal. App. 4th 492, 515 (1993). "Generally, California courts have construed 'wrongful entry or eviction' as applying to tort claims arising out of the interference with

---

*State Farm Ins. Co.*, 810 F. Supp. 267 (N.D. Cal. 1992), considered the question of whether a trespass could be "accidental" where the insured was aware of the existence of the boundary dispute.

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

an interest in real property, such as trespass, nuisance, and noninvasive interferences with the use and enjoyment of property." *Stonelight Tile, Inc. v. California Ins. Guarantee Assn.*, 150 Cal. App. 4th 19, 39 (2007).

**B.    The Underlying Complaint and First Amended Complaint Allege Facts Establishing a Duty to Defend Under Coverage B.**

Philadelphia resorts to a syllogism to avoid its duty to defend under Coverage B.  It argues that if the JBPOA plaintiffs own Jameson Beach Road, the fact pattern does not come within 14(c); *viz.*, their occupancy cannot be interfered with by another claimed owner (here the USFS).  If the USFS owns the roadway, Philadelphia argues the JBPOA plaintiffs' interest is an easement, which is not a possessory interest in real property.  Thus, Philadelphia postulates it has no obligation either way to defend under part B.  (Defendant's Memorandum in Support, 13-14.)  This analysis assumes that the duty to defend is determined by the ultimate outcome of the case as *Philadelphia predicts it.  It need not be shown that coverage is "reasonably" likely for the duty to defend to arise.  Montrose, supra*, 6 Cal. 4th at pp. 299-300 (rejecting "reasonable potential for coverage" standard.)  Instead, all CRR need show is its liability for damages *potentially* covered under the policy.  *Id.*

The real starting point for evaluating the duty to defend is the allegations of the complaint, which are far, far more ambiguous than the facts postulated by Philadelphia.  The UC alleges:

> By causing parking to occur in land in which Plaintiffs' (sic) own an interest in real property, Plaintiffs have suffered injury to the legally protected interest in real property in Plaintiffs (sic) inability to enjoy their property interest along with the use and enjoyment of their rights to the JB Tract Land. Further, Defendants charge parking fees to all persons parking in the JB Tract Land in the amount of $7 per car… Plaintiffs could have used the JB Tract Land to charge parking fees for day users had Defendants not precluded Plaintiffs (sic) use, thereby losing revenue. Alternatively, Plaintiffs lost income in that they should have been entitled to an apportionment of all parking revenues generated on the JB Tract Land.

(FAC ¶ 129.)[4]  These allegations and numerous others (e.g., UC, ¶¶ 21, 30, 57, 123; FAC, ¶¶ 9, 25, 70, 72-74, 78, 79 and 140) open the door to the possibility that the evidence will establish that plaintiffs share an interest in real property with the USFS and that under the USFS' license, CRR interfered with

---

[4] This allegation is in the seventh cause of action, Trespass, which incorporates by reference all allegations set forth "in the above and below paragraphs." (FAC ¶ 128.)

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

the underlying plaintiffs' ownership interests. *Zelda, Inc. v. Northland Insurance Co.*, 56 Cal. App. 4th 1252, 1265 (1997). This latter point establishes compliance with the wording in Coverage B, *viz.*, that the wrongful entry or invasion of the right of private occupancy be "committed by or on behalf of its owner . . ." Plainly, there is a potential for coverage under Coverage B. Philadelphia's motion to dismiss the complaint on this ground must be denied.

## VII. PHILADELPHIA HAS A DUTY TO DEFEND UNDER THE LIQUOR LIABILITY COVERAGE.

### A. Philadelphia's Liquor Policy Issued to CRR Contains the Following Pertinent Terms.

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages.

SECTION V – DEFINITIONS

5. "Injury" means damages because of "bodily injury" and "property damage," including damages for care, loss of services or loss of support.

7. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In plain English, Philadelphia has a duty to defend CRR in any suit that claimed property damage and loss of its use by reason of the selling, serving or furnishing of alcoholic beverages.

### B. CRR Has Established That the Claims Against CRR Arising from the Selling or Furnishing of Alcoholic Beverages are Potentially Covered.

The JBPOA plaintiffs complain that CRR has obtained too many (i.e., four) liquor licenses. UC 6; FAC ¶ 67. By parity of reasoning, there are multiple CRR facilities serving or selling alcoholic beverages other than the Beacon Restaurant.[5] The JBPOA plaintiffs aver that CRR's guests "are often

---

[5] Philadelphia attempts to avoid a duty to defend by relying on the Beacon Restaurant exclusion. (Memorandum in Support at 15:15-18. The argument is unavailing. CRR clearly sells or serves alcoholic beverages at other locations. Philadelphia

loud, boisterous, *drunk* and frequently trespass onto plaintiffs' property and docks, causing plaintiffs special injury in the loss of comfort and enjoyment of their homes." [Italics added.] FAC, Exhibit C, ¶¶ 67, 134 and 137. CRR provided pleadings and abundant extraneous materials to Philadelphia evidencing that CRR is a family vacation spot (FAC, ¶¶ 43, 136; Complaint, Exhibit I, Declaration of Kim McCarl, ¶¶ 5, 9; Declaration of Bryan Morrison, ¶ 10), raising the likelihood that minors are on the premises, that the Camp has multiple liquor licenses and multiple venues for the selling, serving or furnishing of alcoholic beverages, that guests may overindulge at the Camp (Complaint, Exhibit I, ¶¶ 5, 10, 13) and that these inebriated persons cause property damage and loss of its use.

Without citing to authority, Philadelphia argues that it has no duty to defend because CRR faces no potential liability under California law, as liability is limited to service of alcoholic beverages to obviously intoxicated minors. Presumably, Philadelphia is relying upon Business and Professions Code sections 25602(b) and 25602.1. (Defendant's Memo at 15:5-7.) The argument is untenable in the context of a 12(b)(6) pleading motion.

With no discovery undertaken to date, Philadelphia simply cannot assert with certainty that the inebriates referenced in the complaint were *not* minors. It would not be surprising (or unexpected) to find that 17-20 year old youths were drinking and horsing around on plaintiffs' docks. The point is, Philadelphia cannot show that the inebriated individuals complained about in the JBPOA Action were *not* minors. There always remains the possibility they are. It can only escape its duty to defend if the complaint and/or FAC "*can by no conceivable theory raise a single issue which could bring it within the policy coverage.*" *Montrose, supra*, 6 Cal. 4th at 299, 300.[6]

Philadelphia also attempts to elude its defense obligation by assuming the role of the trier of fact in the JBPOA Action. It argues that the cause of the JBPOA's complaints is CRR's failure to control its guests rather than a consequence of serving, selling or furnishing alcoholic beverages. (Complaint, Exhibits H and J.) That conclusion is improper in a Rule 12(b)(6) motion. The UC and FAC clearly

marked Code no. "59211" on its Liquor Liability Schedule, meaning "package stores, liquor stores and other retail establishments selling alcoholic beverages for consumption off premises (not to include convenience stores)." (Complaint, Exhibit A, Bates stamp number CRR Phil 065.)

[6] To the extent that California's Dram Shop Laws provide a defense, Philadelphia owes CRR a duty to advance that defense. It cannot use that defense as a shield to its own defense obligation. See *County of San Bernardino v. Pacific Indemnity Co.*, 56 Cal. App. 4th 666, 688 (1997); *Garriott Crop Dusting Co. v. Superior Court*, 221 Cal. App. 3d 783, 796-797 (1990).

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

plead the JBPOA plaintiffs' concerns about the number of alcoholic beverage permits CRR has obtained, the excess sales or furnishings of alcoholic beverages, and property damage caused by inebriated patrons. In its "causation" argument, Philadelphia is doing precisely what the California Supreme Court proscribed in *Gray v. Zurich* and *Montrose*: It is trying to determine, at the inception of the litigation, its ultimate outcome. This it cannot do. *Gray v. Zurich, supra*, 65 Cal. 2d at 271. The trier of fact will ultimately decide whether the JBPOA plaintiffs' damages, if any, were caused by CRR's failure to control patrons; i.e., the alleged damages could have been avoided with better signs, directions or physical barriers or whether the damages were caused by inebriated guests, whether these guests were minors and whether CRR sold, served or furnished the minors any alcoholic beverages. Those issues must be left for another day.

The extrinsic evidence plainly avers and Philadelphia acknowledges that CRR serves alcohol to its guests. (Complaint, Exhibit I, Declaration of Kim McCarl, ¶¶ 13, 14.) The FAC avers that the JBPOA plaintiffs suffered a loss of use of tangible property as a consequence of allegedly "loud and drunk patrons" who trespass on their property and docks, resulting in the loss of comfort and enjoyment of their homes, docks and other property. (FAC, ¶ 134.) Those allegations fall squarely within the liquor liability coverage form of Philadelphia's insurance policy. Philadelphia was provided with several declarations executed by members of JBPOA in support of their unsuccessful motion to obtain a preliminary injunction in the underlying litigation.[7] Those declarations purport to document CRR's alleged selling and furnishing of alcohol to its guests and likewise document the presence of intoxicated individuals at the JBPOA plaintiffs' property. CRR has pled a connection between the furnishing of alcoholic beverages to patrons, which the JBPOA plaintiffs aver caused them injury and loss of use and enjoyment of the properties. Exhibit C to FAC, ¶¶ 67, 134, 137. CRR is owed a defense under the liquor liability portion of the policy.

## VIII. PHILADELPHIA'S MOTION TO DISMISS THE CLAIM FOR BAD FAITH SHOULD BE DENIED.

Philadelphia predicates its motion to dismiss the claim for bad faith on the lack of any duty to defend CRR. Defendant's Memo at 16:15-23. Philadelphia ignores that it has not yet been established

---

[7] See Declarations attached to Exhibit I to Complaint.

that it owes no duty to defend CRR. To the contrary, this opposition conclusively establishes that Philadelphia *does* owe CRR a duty of defense.

In order to establish an insurer's breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must allege that benefits due under the policy were withheld and the reason given for withholding the benefits was unreasonable or without proper cause. *Nordby Construction, Inc. v. American Safety Indemnity Co.*, 2015 U.S. Dist. LEXIS 34513,*25, citing to *Guebara v. Allstate Insurance Co.*, 237 F. 3d 987, 992 (9th Cir. 2001). A claim for insurance bad faith lies when the insurer's failure or refusal to fulfill its contractual responsibilities is prompted not by an honest mistake, bad judgment or negligence, but rather by a "conscious or deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Nordby, at p. 26,* quoting from *Chateau Chamberay Homeowners Association v. Associated International Insurance Co.*, 90 Cal. App. 4th 335, 346 (2001).

In *Nordby*, the insured alleged that the insurer acted knowingly and deliberately to deny it benefits. It alleged the insurer had previously certified the plaintiff as an additional insured under the relevant policies but still refused to defend the plaintiff despite multiple tenders. Those allegations were sufficient to defeat a motion to dismiss under Rule 12(b)(6).

Here, CRR made similar allegations. It averred that it is a named insured and that Philadelphia deliberately and unjustifiably denied coverage for claims that Philadelphia knew or reasonably should have known were covered by its CGL policy. Complaint at ¶ 36. Philadelphia's denial is particularly troubling as CRR's three other insurers, Great American Insurance Group, Allied Insurance and Zurich Insurance, each covering CRR with CGL policies virtually identical to the Philadelphia policy acknowledged and accepted their duty to defend CRR in the JBPOA litigation. Philadelphia is the lone holdout. This fact was communicated to Philadelphia in a November 25, 2014 letter asking for Philadelphia to reconsider. (Complaint, Exhibit I, p. 8.) CRR further averred additional wrongdoing including Philadelphia's unreasonable and narrow interpretation of the policy and unreasonable failure to provide policy benefits. In sum, CRR pled more than the plaintiff did in *Nordby*.

Whether Philadelphia acted reasonably is a question of fact. *Nordby*, at p. 27, citing *Amadeo v.*
*Principal Mutual Life Insurance Co.*, 290 F. 3d 1152, 1161 (9th Cir. 2002). That question should not be
adjudicated at the pleading stage. Philadelphia's motion to dismiss the bad faith claim should be denied.

## IX.     CONCLUSION

For the foregoing reasons, Philadelphia's Rule 12(b)(6) motion should be denied. If any portion
is granted, CRR should be given leave to amend.

DATED: August 27, 2015

Respectfully submitted,

BANKS & WATSON

By:    ___/s/ James J. Banks_____
JAMES J. BANKS
Attorneys for Plaintiff,
CAMP RICHARDSON RESORT, INC.

**BANKS & WATSON**
**CASE NAME:** *Camp Richardson Resort, Inc. v. Philadelphia Indemnity Insurance Company*
**COURT:** **United States District Court, Eastern District of California**
**CASE NO:** **2:15-CV-01101-TLN-AC**

## PROOF OF SERVICE

STATE OF CALIFORNIA    )
                                 ) ss.
COUNTY OF SACRAMENTO    )

      At the time of service, I was over 18 years of age and not a party to this action. My business address is 901 F Street, Suite 200, Sacramento, California 95814.

      On August 27, 2015, I served the within copy of:

**PLAINTIFF CAMP RICHARDSON RESORT, INC.'S**
**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

on the person(s) below, as follows:

Mr. James C. Nielsen                  *Attorneys for Defendant*
Mr. Daniel N. Katibah               Philadelphia Indemnity Ins. Co.
Nielsen, Haley & Abbott Llp
100 Smith Ranch Road, Suite 350
San Rafael, CA  94903             Phone: (415) 693-0900
                                           Fax: (415) 693-9674
jnielsen@nielsenhaley.com
dkatibah@nielsenhaley.com

( ✓ )  **VIA PDF FORMAT - EMAIL – Due to a CM/ECF Technical Failure** I caused said document(s) to be transmitted via PDF format to the following persons at their respective email address(es): James C. Nielsen jnielsen@nielsenhaley.com; and Daniel N. Katibah dkatibah@nielsenhaley.com. No reports of incomplete transmission were received within a reasonable time after service.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 27, 2015, at Sacramento, California.

*Mary Ellen Beverly*
Mary Ellen Beverly



Welcome to the U.S. District Court for the Eastern District of California - Live System

Eastern District of California - Live System - Document Filing System

---

# CM/ECF TECHNICAL FAILURE

**Pursuant to Local Rule 134(c) the Court is declaring a CM/ECF Technical Failure for Thursday, August 27, 2015.**
**A party may file the next business day following a technical failure.**
**Service is required despite the Court's technical failure. Documents shall be served directly on all counsel.**
**See Local Rule 134(c)(1) and (2).**

---

3June2013

Court Information

| | |
|---|---|
| **From:** | Mary E. Beverly |
| **Sent:** | Thursday, August 27, 2015 7:40 PM |
| **To:** | 'jnielsen@nielsenhaley.com'; 'dkatibah@nielsenhaley.com' |
| **Cc:** | James J. Banks |
| **Subject:** | Service of Opposition in Camp Richardson Resort, Inc. v. Philadelphia Indemnity Ins. Co. |
| **Attachments:** | CRR - Camp Richardson's Opposition to Motion to Dismiss.pdf |

Dear Messrs. Nielsen and Katibah:

Due to a CM/ECF Technical Failure and pursuant to Local Rules 134(c)(1) and (2), attached is a true and correct copy of **PLAINTIFF CAMP RICHARDSON RESORT, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Mary Ellen Beverly

Mary Ellen Beverly
Temporary Legal Secretary for
Janna Yoshida
Legal Assistant to James J. Banks
and Roberta Lindsey Scott
BANKS & WATSON
901 F Street, Suite 200
Sacramento, CA  95814-0733
(916) 325-1000
(916) 325-1004 (facsimile)
http://www.bw-firm.com

CONFIDENTIALITY NOTICE -- PRIVILEGED AND CONFIDENTIAL

This communication constitutes an electronic communication within the meaning of the Electronic Communication Privacy Act, 18 U.S.C. § 2510.  This communication and any accompanying document(s) are confidential and privileged.  They are intended for the sole use of the addressee.  If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited.  Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication or otherwise.  If you have received this communication in error, please contact me at the above Internet address or telephone number.  Thank you.