JAMES C. NIELSEN (111889)
 jnielsen@nielsenhaley.com
DANIEL N. KATIBAH (293251)
 dkatibah@nielsenhaley.com
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Defendant,
PHILADELPHIA INDEMNITY INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMP RICHARDSON RESORT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY;<br><br>Defendant. | Civil Action No.:<br>2:15-CV-01101-TLN-AC<br><br>REPLY BRIEF IN SUPPORT OF PHILADELPHIA'S MOTION TO DISMISS<br><br>Date: Thursday, Sept. 10, 2015<br>Time: 2:00 p.m.<br>Courtroom: 2, 15th Floor<br><br>HONORABLE<br>TROY L. NUNLEY |

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | DISCUSSION | | 1 |
| | 1. | The Resort confuses lack of intent to cause *harm* with the occurrence of an insurance-covered "accident." | 1 |
| | 2. | Neither complaint in the *Jameson Beach* action alleges "property damage" because the *Jameson Beach* plaintiffs are not seeking damages for "loss of use" of their property. | 4 |
| | 3. | Coverage B cannot possibly apply. | 5 |
| | 4. | The Liquor Liability Coverage does not apply. | 6 |
| | 5. | The Resort fails to show how Philadelphia could be liable for "bad faith." | 9 |
| | 6. | The Court should dismiss the complaint without leave to amend. | 9 |
| III. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

CASES

*Allstate Ins. Co. v. Salahutdin*
   815 F.Supp. 1309 (N.D. Cal. 1992) ..... 3

*Allstate Ins. Co. v. Vavasour*
   797 F.Supp. 785 (N.D. Cal. 1992) ..... 2, 3

*Amadeo v. Principal Mut. Life Ins. Co.*
   290 F.3d 1152 (9th Cir. 2002) ..... 9

*APSB Bancorp v. Thornton Grant*
   26 Cal.App.4th 926 (1994) ..... 6

*Bailey v. State Farm Ins. Co.*
   810 F.Supp 267 (N.D. Cal. 1992) ..... 3

*Cahill v. Liberty Mutual Ins.*
   80 F.3d 336, 339 (9th Cir. 1996) ..... 10

*Cantwell v. Peppermill, Inc.*
   25 Cal.App.4th 1797 (1994) ..... 7, 8

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*
   90 Cal.App.4th 335 (2001) ..... 10

*Collin v. American Empire Ins. Co.*
   21 Cal.App.4th 787 (1994) ..... 2, 4

*County of San Bernardino v. Pacific Indemnity Co.*
   56 Cal.App.4th 666 (1997) ..... 9

*Delgado v. Interinsurance Exch. of Auto. Club of So. Cal.*
   47 Cal.4th 302 (2009) ..... 3

*F&H Constr. v. ITT Hartford Ins. Co. of the Midwest*
   118 Cal.App.4th 364 (2004) ..... 4, 7

*Fire Ins. Exchange v. Superior Court*
   181 Cal.App.4th 368 (2010) ..... 2, 3

*Garriot Crop Dusting Co. v. Sup. Ct.*
   221 Cal.App.3d 783 (1990) ..... 9

*Guebara v. Allstate Ins. Co.*
   237 F.3d 987 (9th Cir. 2001) ..... 9

*Gunderson v. Fire Ins. Exchange*
　　37 Cal.App.4th 1106 (1995) .................................................................. 3, 8

*Lunsford v. American Guarantee & Liability Ins. Co.*
　　18 F.3d 653 (9th Cir. 1994) .................................................................. 9

*Merced Mutual Ins. Co. v. Mendez*
　　213 Cal.App.3d 41 (1989). .................................................................. 1, 2

*Montrose Chem. Corp. v. Superior Court*
　　6 Cal. 4th 287 (1993) .................................................................. 8

*New Hampshire Ins. Co. v. Viera*
　　930 F.3d 696 (9th Cir. 1991) .................................................................. 4, 5

*North East Ins. Co. v. Masonmar, Inc.*
　　2014 U.S. Dist. Lexis 40381 (E.D. Cal. 2014) .................................................................. 7, 8

*Quan v. Truck Ins. Exch.*
　　67 Cal.App.4th 583 (1998) .................................................................. 3

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*
　　12 Cal.App.4th 715 (1993). .................................................................. 2

*Upper Deck Co. v. Fed. Ins. Co.*
　　358 F.3d 608 (9th Cir. 2004) .................................................................. 8

TREATISES

23 Cal.Jur.3d, Damages, §§ 70, 73 .................................................................. 4

OTHER MATERIALS

*Black's Law Dictionary* (7th ed. 1999) .................................................................. 6

iv
REPLY BRIEF IN SUPPORT OF PHILADELPHIA's MOTION TO DISMISS 2:15-cv-01101-TLN-AC

# I. INTRODUCTION

Philadelphia moved to dismiss Camp Richardson Resort, Inc.'s, complaint because it owes no duty to defend the Resort in the underlying third-party action and acted reasonably in declining the Resort's tenders of defense. The Resort's opposition brief fails to rebut the legal propositions underlying Philadelphia's arguments or to demonstrate the existence of any allegations or facts implicating the policy's coverage clauses. The motion to dismiss should thus be granted without leave to amend.

We address and rebut each of the Resort's contentions below.

# II. DISCUSSION

### 1. The Resort's confuses lack of intent to cause *harm* with the occurrence of an insurance-covered "accident."

As explained in Philadelphia's moving papers, the Resort's conduct—both actual and alleged—in the underlying *Jameson Beach* action was deliberate, not accidental. "An accident…is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Merced Mutual Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 50 (1989). Because the lawsuit alleged no accident, Philadelphia owed no duty to defend under Coverage A.

The Resort evades this rule by contending that the "unforeseen happening" required in cases like *Mendez* means an "accident" occurred here because "the 'unexpected, undesigned, and unforeseen' dominated the course of events" in the *Jameson Beach* action. (Opp. 11:17-18.) That is, the Resort argues that its lack of knowledge about the Association's ownership claim to Jameson Beach Road renders the Resort's conduct in trespassing on and controlling the road "accidental" and thus covered. The Resort further contends that the Forest Service's, not its own, mistake of fact regarding the road's actual ownership led to the *Jameson Beach* claims, thereby rendering the Resort's own conduct "accidental." (Opp. 11:19-24.)

This argument is untenable because an insured's lack of intent to cause damage is not an insurance-covered accident. The term "accident" in the "occurrence" definition

refers to "a *causal* event," such that "an 'accident' *cannot* mean *unintended damage* because the causal event also would be the result... a consequence cannot cause itself." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 750 (1993). The *Mendez* court later explained that "both 'the *means* as well as the result must be unforeseen, involuntary, unexpected and unusual,'" meaning "where the insured intended all of the acts that resulted in the victim's injury, the event may *not* be deemed an 'accident' *merely because the insured did not intend to cause injury*." 213 Cal.App.3d at 50 (emphasis original & added). Other California courts consistently reach the same conclusion. *E.g., Fire Ins. Exchange v. Superior Court*, 181 Cal.App.4th 368, 396 (2010) (insured's ineffective attempts to obtain title through a lot-line adjustment did not render trespass "accidental" because "the reasons for [the insured's] failure to obtain title is irrelevant to the determination whether the act in locating the building where they did can be characterized as an accident...[t]here was no unexpected and unintended event between the intentional construction of the building and the encroachment."); *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 810 (1994) ("the term "accident" refers to the insured's intent to commit the act giving rise to liability, as opposed to his or her intent to cause the consequences of that act…deliberate conduct is not an "accident" or "occurrence" irrespective of the insured's state of mind").

Tellingly, the Resort defends its position at pp. 11-12 by reaching back to the outmoded decision in *Allstate Ins. Co. v. Vavasour*, 797 F.Supp. 785, 788 (N.D. Cal. 1992), where the district court found that an insured couple did not know it was trespassing on a neighbor's land, rendering their conduct an "accident" because they did not mean to cause injury. But "*Vavasour* stands out in singular contrast to the prevailing rule…[a]s we have discussed, any suggestion in *Vavasour* that the harm occasioned by intentional conduct may constitute an accident when the person engaged in the conduct is unaware of its wrongful character is contrary to the holdings of our state courts." *Fire Ins. Exchange,* 181 Cal.App.4 at 395. *Vavasour* erodes every time a court applying California law considers this issue. *Delgado v. Interinsurance Exch. of Auto. Club of So. Cal.*, 47 Cal.4th 302, 317

2
REPLY BRIEF IN SUPPORT OF PHILADELPHIA'S MOTION TO DISMISS 2:15-cv-01101-TLN-AC

(2009) (genuine but mistaken belief in need for self defense does not render intentional striking of another person an accident); *Quan v. Truck Ins. Exch*, 67 Cal.App.4th 583, 598-599 (1998) ("the acts asserted to give rise to the…claimant's injuries were deliberate, regardless of whether any harm was intended"); *Allstate Ins. Co. v. Salahutdin*, 815 F.Supp. 1309, 1312 (N.D. Cal. 1992) (insured's lack of intent to injure a neighbor's property "is irrelevant…action cannot be considered accidental merely because [the insured] did not intend to harm").[1] In short, *Vavasour* is bad law and cannot rebut the overwhelming authority that supports Philadelphia's motion.

Further, the Resort's attempt to blame the Forest Service for the alleged mistake about use of the road (Opp. 11:21-24) goes nowhere because California law remains the same even if a third-party's mistake of fact is alleged rather than or in addition to the insured's. In *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106, 1109 (1995), insureds purchased land and— much like the Resort's circumstance here—received "assurances of the previous owner that they had the use of an easement for ingress and egress, consisting of a gravel driveway … running the entire length of [the insureds'] property and which was located on the adjoining property." The insureds removed a portion of their neighbor's fence and parked cars on her driveway and the neighbor sued to quiet title and for an injunction. *Id*. When the insureds sued their insurer for coverage, the *Gunderson* court found no duty to defend "[b]ecause any damage to the fence could not have arisen from an accidental 'occurrence' within the meaning of the insuring clause." *Id*. at 1116. That the insureds had been misinformed about the easement simply did not matter.

Simply put, the Resort's conduct alleged in the *Jameson Beach* action was deliberate. No "accident" took place. Nothing in the Resort's opposition refutes this and,

---

[1] The Resort claims (Opp. 12-13, fn. 3) that *Fire Ins. Exch.*, *Salahutdin*, and *Bailey v. State Farm Ins. Co.*, 810 F.Supp 267 (N.D. Cal. 1992) "declined to follow *Vavasour*" because those cases involved "the question of whether a trespass could be 'accidental' where the insured was aware of a property boundary dispute." Not so. While *Bailey* did make that distinction, it was decided by the same judge as *Vavasour*; the court in *Salahutdin* made no such qualification and, as noted, *Fire Ins. Exch.* directly confronts and disapproves the *Vavasour* reasoning.

as a result, the policy's Coverage A cannot apply.

  **2.** **Neither complaint in the *Jameson Beach* action alleges "property damage" because the *Jameson Beach* plaintiffs are not seeking damages for "loss of use" of their property.**

  The lack of an accident defeats the possibility of liability within Coverage A in the first instance. Even if we assume (without conceding) an accident, however, the Resort also cannot show insurance-covered "property damage." In this regard, it fails to address and thus concedes Philadelphia's point that allegations of harm to the *Jameson Beach* plaintiffs' alleged right to an *easement* do not implicate such damage. Rather, the Resort points to their allegations that they hold fee-title to the road itself. The Resort submits that both *Jameson Beach* complaints claim "property damage" because the plaintiffs allege being "deprived…of ownership or use of a 25-foot strip of the roadway that connects their subdivision to Highway 89, which plaintiffs allege they own." (Opp. 8:13-15.)

  The Resort, however, mistakenly equates "loss of use" with "loss of property," which is not insurance-covered "property damage." *Collin,* 21 Cal.App.4th at 818. Rather, "loss of use" of tangible property within the definition of "property damage" refers to loss of the "rental value" or the equivalent of substitute property. *Id.* Thus, if a complaint "does not seek damages for the rental value (or its equivalent) for the loss of the use of the" property in question, the damages sought are not for "property damage" within the meaning of a commercial liability policy. *F&H Constr. v. ITT Hartford Ins. Co. of the Midwest*, 118 Cal.App.4th 364, 377 (2004); *see also* 23 Cal.Jur.3d, Damages, §§ 70, 73, pp. 129-130 (loss of use of personal property determined by rental value of similar property or loss of profits or increased costs from loss of use). Additionally, to the extent the *Jameson Beach* plaintiffs' seek damages for their property's supposed diminution in value, they have not alleged claims for "property damage." *See New Hampshire Ins. Co. v. Viera*, 930 F.3d 696 (9th Cir. 1991) ("diminution in value does not constitute property damage").

  **3.** **Coverage B cannot possibly apply.**

  The Resort complains that Philadelphia improperly analyzes coverage based on "the

ultimate outcome of the [underlying] case as Philadelphia predicts it." (Opp. 14:12-13.) That is, if the Association holds fee title to Jameson Beach Road, Coverage B does not apply because covered interference with occupancy "cannot be interfered with by another owner," here the Forest Service; alternatively, if the Forest Service holds fee title, the Association holds only an easement, which "is not a possessory interest" subject to Coverage B. (Opp. 14:8-9.)

These descriptions are basically correct, but the coverage argument does not rely on Philadelphia's *predictions*. After all, there are only two possibilities raised by the *Jameson Beach* pleadings—either the Association holds title to the road or the Forest Service does—and under either, the coverage result is the same. Philadelphia simply pointed out that, if the Association owns the roadway, the Resort's alleged trespasses cannot implicate Coverage B because those acts are not an "invasion…*committed by or on behalf of the owner*," as Coverage B requires. Alternatively, if the Forest Service owns the roadway, the Association can hold at most an easement, which not the sort of interest—a "right of private occupancy of a room, dwelling or premises that a person occupies"—protected by Coverage B. No one need "predict" the outcome of the Association's ownership claims to find its claims against the Resort beyond Coverage B's reach.

The Resort nonetheless argues for a third potential outcome. Citing both complaints in the *Jameson Beach* action, the Resort claims that *both* the Forest Service *and* the Association might own fee title to the roadway. (Opp. 14:16–15:5.) The Resort then suggests that its own trespass on the Association's portion of this shared fee interest would constitute an "invasion…on behalf of the owner" because the Resort operated under a *license* issued by the Forest Service, a partial owner. *Id*. In the first instance, none of the allegations the Resort cites say or imply that the Association and the Forest Service share joint title to the same patch of land. (*E.g.,* FAC ¶ 74 ["At best the JBPOA and its members hold fee title to the JB Tract Land. In the alternative; however, at a minimum the JBPOA and its members hold an unqualified easement of access and right of way."].) To be sure, the plaintiffs describe the *boundary line* in metes-and-bounds fashion, so that it remains

possible that the boundary between the parties' two properties may lie somewhere in the middle of the road. (*E.g.*, FAC ¶ 27, referencing "a right of way for road purposes [from a certain spot] and running thence ... along the center line of a 25 foot right of way for road purposes to the county road.") Only in that sense might the Forest Service and the Resort "share" the roadway. But this result would not conflict with Philadelphia's two-outcome analysis; rather, it would mean that both noncovered outcomes could result simultaneously.

Moreover, even if the allegations did suggest that the Association and the Forest Service share joint title to the whole road, it would make no difference. The "license" under which the Resort acted is just "a revocable permission to commit some act that would otherwise be unlawful," *Black's Law Dictionary* (7th ed. 1999) p. 931, in this case use of the road. By contrast, one who "contracts to act *on behalf of*" a principal is an *agent*. *APSB Bancorp v. Thornton Grant*, 26 Cal.App.4th 926, 930 (1994) (italics added). Merely granting permission to a licensee does not make the licensee an agent of the owner so as to act on its behalf. Even under the Resort's strained reading of the allegations, Coverage B still could not apply.[2]

### 4. The Liquor Liability Coverage does not apply.

Philadelphia's Liquor Liability coverage applies only if "*liability* for … 'injury' *is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage*." (Compl., Ex. A., p. 203, italics added.) Philadelphia's motion pointed out that such coverage applies only to liability for injuries inflicted by obviously intoxicated minors to whom an insured business has allegedly served more liquor. *North East Ins. Co. v. Masonmar, Inc.* 2014 U.S. Dist. Lexis 40381 (E.D. Cal. 2014). This is because California's liquor-liability statutes permit "liability" to be "imposed" for serving alcohol to customers *only* when those customers are such obviously intoxicated minors. *Cantwell v. Peppermill, Inc.*, 25 Cal.App.4th 1797, 1801 (1994). Remarkably, the Resort argues for Liquor

---

[2] The Resort cites *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal.App.4 1252, 1265 (1997) as support for its position. (Opp. 15:1.) That case did not involve use of real property under a license nor a policy that employed the phrase "by or on behalf of its owner" in Coverage B, as this case does.

Liability coverage without ever confronting or even citing *Masonmar* or *Cantwell*, apparently preferring to make up law on its own. It thus fails to rebut that, if "liability" to the Association is "imposed" on the Resort, it will *not* be "by reason of" the selling, serving, or furnishing of alcohol to intoxicated minor, which is what the coverage requires.

Ignoring these basic points, the Resort responds that it has been sued for damages caused by patrons who "are often loud, boisterous, *drunk* and frequently trespass on plaintiffs' property" (Opp. 15:24 – 16:3, italics the Resort's) and thus states claims for damages "caused by inebriated patrons." (Opp. 16:24 – 17:23.) But allegations of trespass by patrons (even if drunk) do not suggest that "*liability*" is sought to be "*imposed on*" the Resort "*by reason of* selling, serving, or furnishing" alcohol, as the policy requires. Suing for private nuisance, trespass, and public nuisance (the *Jameson Beach* plaintiffs' 6th, 7th, and 8th claims in Exh. B) because of the disruptive operations of a bar by itself—which is all that has been alleged—bears no legal relationship to serving intoxicated minors. Philadelphia's Liquor Liability coverage cannot apply at the outset.

Next, the Resort acknowledges that the coverage's term "injury" under the Liquor Liability form means, as relevant here, only damages caused by insurance-covered "property damage" (Opp. 15:13-18) but then equates the allegations of trespass by drunk Resort patrons onto the plaintiffs' property as depriving the plaintiffs of the use of their property. But neither complaint alleges that the drunk patrons caused "property damage" based on a "loss of use." As discussed earlier, when a complaint does "not seek damages for the rental value (or its equivalent) for the loss of the use" of the property at issue, the damages sought are not for insurance-covered "property damage." *F&H Constr.,* 118 Cal.App.4th at 377. Rather, the drunk-patron claims at most allege "wrongful entry" of the sort that would fall within Coverage B, except for the fact (discussed earlier) that the wrongful entry was not committed by or on behalf of the property's owner. Thus, the *Jameson Beach* action does not even allege damages of the sort that would be covered by the Liquor Liability coverage.

Finally, the Resort confronts the fact that it cannot be liable for serving liquor

without having served—or at least having been alleged to have served—obviously intoxicated minors. *Cantwell,* 25 Cal.App.4th at 1801; *Masonmar, Inc.* 2014 U.S. Dist. Lexis 40381. The problem the Resort faces is it can cite no allegation by the *Jameson Beach* plaintiffs or evidence in the case of obviously intoxicated minors. Instead, it resorts to rank speculation that, because the Resort is "a family vacation spot, …Philadelphia cannot assert with certainty that the inebriates referenced in the complaint were *not* minors." (Opp. 16:14-20, italics orig.)

It is axiomatic, however, that an "insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. This approach misconstrues the principle of 'potential liability' under an insurance policy." *Gunderson,* 37 Cal.App.4th at 1114; accord *Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 615 (9th Cir. 2004) ("Only amendments that would include new causes of action clearly supported by the *facts already pled in the complaint* may support a finding of potential liability." [Italics added, cit. omitted.].) This principle circumscribes the phase "any conceivable theory" for determining the duty to defend from *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993), upon which the Resort relies. Yet speculation is exactly what the Resort improperly attempts to do. Nothing in the complaints or otherwise suggests a possibility that *obviously intoxicated minors* were *served* alcohol *by* the Resort and, by way of being served alcohol, caused the plaintiffs' damages. Therefore, the Resort is not exposed to "liability … imposed" on it "by reason of the selling, serving or furnishing" of alcohol. The Resort may not legally rely on baseless speculation to manufacture a duty to defend.[3]

---

[3] The Resort cites two cases in this portion of its brief, but neither supports its conclusions or involves California's liquor statutes. One, *County of San Bernardino v. Pacific Indemnity Co.*, 56 Cal.App.4th 666, 688 (1997) prevented an insurer from denying coverage on the basis of a statute of limitations defense, because the known facts rendered that defense's success "speculative." The other case, *Garriot Crop Dusting Co. v. Sup. Ct.*, 221 Cal.App.3d 783, 796-797 (1990), invalidated a disclaimer because already known facts suggested the complaint could feasibly be amended to include a negligence claim. Neither situation is present here, where, in light of California's statutory restrictions against liability for serving liquor, no facts are alleged or otherwise known which could support holding the Resort liable for injuries *caused by* serving liquor.

**5. The Resort fails to show how Philadelphia could be liable for "bad faith."**

The Resort glibly concludes that its "bad faith" claim cannot be dismissed at this juncture because whether Philadelphia acted "unreasonably," a required element of a bad faith claim, is a question of fact not appropriate for determination at the pleading phase. (Opp. 19:1-3.) The Resort is wrong. Even the case it cites, *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002), does not support it. *Amadeo* simply affirms the basic summary judgment rule that a genuine dispute of material fact generally creates the need for a trial. *Id*. at 1162. But *Amadeo* confirmed that summary judgment can be had on a bad-faith claim where an insurer adopts "'a reasonable construction of the policy' in the context of unsettled law and it was not disputed that the insurer conducted an adequate investigation of the claim." *Id.*, citing *Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994).

Here, Philadelphia laid out in detail why its investigation of the potential duty to defend the Resort, based on all facts and allegations known to it at the time, was adequate, and the entirety of the record is before the Court. The Resort does not contest that adequacy, and assiduously avoids the well-established line of cases holding that if a "genuine dispute as to coverage" exists when an insurer disclaims coverage, courts are entitled "as a matter of law" to find that an insurer acted reasonably in doing so. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). This "genuine dispute" doctrine exists to eliminate the potential for prolonging meritless bad-faith claims, because the very existence of a "reasonable and legitimate dispute" precludes the possibility of bad faith liability. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.* 90 Cal.App.4th 335, 347 (2001).

**6. The Court should dismiss the complaint without leave to amend.**

The Resort contends that it should be given leave to amend its complaint if its claims are not sufficiently pled. But there is no need in this case to allow for further amended pleadings. If "granting to leave to amend" will ultimately be futile, such leave should not be granted. *Cahill v. Liberty Mutual Ins.*, 80 F.3d 336, 339 (9th Cir. 1996). There, the Ninth

Circuit agreed that, because the insureds were "unable to state a claim that would have been covered under a policy's 'advertising injury' clause…the district court did not abuse its discretion in refusing to allow leave to amend." *Id*. Such is the case here, where the Resort cannot state any covered claim under the policy. Leave to amend should not be granted.

### III. CONCLUSION

Philadelphia's motion to dismiss demonstrated that the *Jameson Beach* action presents no "potential" for covered liability under Philadelphia's policy. The Resort therefore cannot, as a matter of law, state claims for declaratory relief, breach of contract, or "bad faith" against Philadelphia, which has no duty to defend that lawsuit. Moreover, the Resort's Opposition does not, because it cannot, show how they could sufficiently allege such claims.

Because no purpose would be served by further pleadings, Philadelphia respectfully requests that the court grant this motion and dismiss Philadelphia from the action without leave to amend.

September 3, 2015          Respectfully Submitted,

NIELSEN, HALEY & ABBOTT LLP


By: _____/s/_____
     JAMES C. NIELSEN
     Attorneys for Defendant
     PHILADELPHIA INDEMNITY INSURANCE CO.

CAMP RICHARDSON RESORT, INC. v. PHILADELPHIA INDEMNITY INSURANCE COMPANY    CASE NO. 2:15-CV-01101-TLN-AC

# PROOF OF SERVICE

I declare that:

I am a citizen of the United States, employed in the County of Marin. I am over the age of eighteen years, and not a party to the within cause. My business address is 100 Smith Ranch Road, Suite 350, San Rafael, California 94903. On the date set forth below, I served true and correct copies of the following document(s) described as follows:

**REPLY BRIEF IN SUPPORT OF PHILADELPHIA'S MOTION TO DISMISS**

[ X ] (BY CM/ECF NOTICE OF ELECTRONIC FILING) I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

[ X ] (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Rafael, California.

| | |
|---|---|
| **Attorneys for Plaintiff Camp Richardson Resort, Inc.** | **Attorneys for Plaintiff Camp Richardson Resort, Inc.** |
| James J. Banks, Esq. | Roberta L. Scott |
| BANKS & WATSON | BANKS & WATSON |
| 901 F Street, Suite 200 | 901 F Street, Suite 200 |
| Sacramento, CA 95814 | Sacramento, CA 95814 |
| P: (916) 325-1000 | P: (916) 325-1000 |
| F: (916) 325-1004 | F: (916) 325-1004 |
| jbanks@bw-firm.com | rlscott@bw-firm.com |

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on September 3, 2015 at San Rafael, California.

_____
Lawrene Morgan

**PROOF OF SERVICE**