UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMP RICHARDSON RESORT, INC., | No. 2:15-cv-01101-TLN-AC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | |
| Defendant. | |

This matter is before the Court pursuant to Defendant Philadelphia Indemnity Insurance Company's ("Defendant" or "Philadelphia") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Plaintiff Camp Richardson Resort ("Plaintiff" or "CRR") opposes Defendant's motion. (ECF No. 12.) The Court has carefully considered the arguments raised by both parties. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

On May 5, 2015, Plaintiff filed its complaint seeking declaratory relief and damages for breach of contract and breach of the covenant of good faith against Defendant. (ECF No. 2) The complaint arises from a third-party suit against Plaintiff by the Jameson Beach Property Owners' Association and other individuals (hereinafter the "third party"), currently pending in this District,

1

13-cv-01025-MCE-AC.

In summary: "CRR is a year-round resort on the shores of Lake Tahoe, including a marina, hotel ice cream parlor, restaurant, cabins and campground. It is owned by the United States Forest Service ("USFS") and operated by CRR under Special Use Permits. A subdivision of lakeside homes, the Jameson beach Subdivision, lies to the east of CRR. A partially-paved 25-foot strip of land on CRR's eastern boundary provides access from State Highway 89 to the main Camp facility, the marina, and to the public beach. It is identified as 'Jameson Beach Road' [or the "roadway"]. CRR, at the direction of USFS, provides public parking spaces along Jameson Beach Road and controls the flow of traffic from Highway 89 into the Camp via traffic kiosk. [] The Jameson Beach subdivision property owners and guests use the roadway for ingress and egress." (Pl.'s Opp., ECF No. 12 at 8.)

In the third-party suit, the "averments against CRR complain about its operation of the Camp and its use of Jameson Beach Road. The [third party] plaintiffs claim alternatively a fee interest or a usage interest in the 25-foot strip of land." (ECF No. 12 at 8–9.)

The third party plaintiffs "allege CRR interfered with their property interests and their use and enjoyment of the [roadway]. The pleadings accuse CRR of cutting down trees within the [roadway], of negligently erecting and maintaining the traffic control kiosk and chalking parking spaces. The [third party] plaintiffs complain CRR obtained too many alcohol beverage permits and claim damages/injury from drunken patrons, loud music, and open trash cans. [The third party plaintiffs] claim these acts interfere with their property rights." (ECF No. 12 at 9) (internal citations to the third party pleadings omitted).

In pertinent part, the first amended complaint in the third party lawsuit brings claims for quiet title, interference with an easement, ejectment, trespass, public nuisance, private nuisance, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. (ECF No. 10, Ex. C.)

The instant action arises because Plaintiff, Camp Richardson Resort, is insured by Defendant, Philadelphia Indemnity Insurance Co., under a commercial general liability coverage policy ("CGL Policy"), which contains three relevant provisions: Coverage A, Coverage B, and

1 | Liquor Liability Coverage.

2 | Coverage A insures Plaintiff against liability for bodily injury and property damages as a result of an "occurrence." (ECF No. 2-1 at 159.) An "occurrence" is defined under the CGL Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF No. 2-1 at 172.) The definition of "property damage" includes "loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (ECF No. 2-1 at 173.)

Coverage B insures Plaintiff against "personal and advertising liability." (ECF No. 2-1 at 164–165.) Personal and advertising liability is defined in pertinent part as "injury…arising out of one or more of the following offenses…(c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor…(e) oral or written publication, in any manner, of material that violates a person's right of privacy…." (ECF No. 2-1 at 172.)

Under the Liquor Liability Coverage, Plaintiff is insured against liability for damages because of 'injury'…[if] such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (ECF No. 2-1 at 203.)

On July, 17, 2015, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim, arguing that the facts do not support a duty to defend or indemnify under the CGL Policy.[1] (ECF No. 9.) Plaintiff filed an opposition on August 8, 2015. (ECF No. 12.) Defendant filed a reply on September 3, 2015. (ECF No. 13).

A court may consider documents external to the pleadings in a motion to dismiss under the incorporation by reference doctrine, where the contents of the documents are alleged in the complaint and neither party questions the authenticity of the documents. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court hereby takes judicial notice of the documents filed as ECF Nos. 2-1, 2-2, and 10. These documents include the insurance policy in question, the third-party complaints, declarations, and communications between Plaintiff and Defendant regarding

---

[1] Defendant submits that because all of the relevant documents are attached as exhibits, this matter is unusually suitable for resolution albeit the matter is before the Court on a 12(b)(6) motion.

the policy and coverage.

## STANDARD OF LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim…is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; see also *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Moreover, it is inappropriate to assume that the plaintiff "can prove

4

1  facts that it has not alleged or that the defendants have violated the…laws in ways that have not
2  been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
3  459 U.S. 519, 526 (1983).
4    Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
5  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting
6  *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims … across
7  the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While
8  the plausibility requirement is not akin to a probability requirement, it demands more than "a
9  sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a
10 context-specific task that requires the reviewing court to draw on its judicial experience and
11 common sense." *Id.* at 679.
12   In ruling upon a motion to dismiss, the court may consider only the complaint, any
13 exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of
14 Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*
15 *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.
16 1998).
17   If a complaint fails to state a plausible claim, "[a] district court should grant leave to
18 amend even if no request to amend the pleading was made, unless it determines that the pleading
19 could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130
20 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see*
21 *also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in
22 denying leave to amend when amendment would be futile). Although a district court should
23 freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to
24 deny such leave is 'particularly broad' where the plaintiff has previously amended its
25 complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.
26 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).
27 / / /
28 / / /

## ANALYSIS

### I. First Cause of Action: Declaratory Relief

Under California law, an insurer has a broad duty to defend its insured. *Anthem Electronics, Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). "The California Supreme Court has stated that 'the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy…[O]nce the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can conclusively refute that potential.'" *Id.* (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993). Further, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.*

"The defense duty is…determined at the outset of the underlying action by comparing the policy provisions with the complaint allegations and any relevant extrinsic evidence to determine if there is any potential of coverage under the policy. If there is, a defense is owed even where ultimately it is determined there was no coverage and therefore no indemnity liability." *Maryland Cas. Co. v. Nat'l Am. Ins. Co.*, 48 Cal. App. 4th 1822, 1828 (1996) (citing *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 276 (1966)). Plaintiff argues that the facts alleged in the complaint are sufficient to give rise to the duty to defend under each form of coverage, and Plaintiff seeks declaratory relief accordingly.

A. <u>Coverage A</u>

Coverage A reads in pertinent part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages ... we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply ....

/ / /

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" …
>
> …
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions ...
>
> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(ECF No. 2-1 at 159, 171–172.)

Liability coverage under Coverage A turns on the meaning and interpretation of "occurrence" under the policy. Under the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF No. 2-1 at 172.) The arguments made by Defendant and Plaintiff only concern the third-party's allegations in the FAC that CRR has violated the third-party's usage and/or ownership interests in the roadway. (*See* ECF No. 12 at 13–18.) According to Plaintiff, the "accident" in this case is the fact that the third party actually had some usage or ownership interest in the roadway, which was unknown to Plaintiff. That is, "CRR undertook the complained of actions without knowledge that it may be committing a trespass … CRR's alleged trespass is 'accidental' and an occurrence under the policy." (ECF No. 12 at 18.) Defendant argues that the third-party does not allege any damages caused by accident but rather only intentional conduct on the part of the Plaintiff. (ECF No. 9-1 at 16–17.)

The most analogous case cited by Plaintiff in support is *Allstate Ins. Co. v. Vavasour*, 797 F. Supp. 785 (N.D. Cal. 1992). In *Vavasour*, the court ruled that the insurer had a duty to defend the insured in an underlying case for trespass. The trespass claim arose because the insured regularly drove across their neighbor's property to access their garage, although the insured had

7

1  no "inkling" that the property they drove across what not theirs. *Id.* at 788. The court held that
2  this conduct fell under the definition of accident under the policy because the insured lacked the
3  intent to cause the harm. *Id.*

4    Plaintiff argues that, as in *Vavasour*, it was unaware that the property it was using and
5  occupying was not the property of CRR. Therefore, while trespass and damage to the third-
6  party's property might have occurred, Plaintiff did not intend the resulting harm, making the harm
7  a result of an accident. (ECF No. 12 at 10–13.) However, as Defendant rightfully argues,
8  *Vavasour* is an outlier case and has been described as "'the only California case failing to
9  recognize th[e] principle' that the fact that conduct is intentional is dispositive of the question of
10 whether an 'accident' occurred." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 372 (4th Cir. 2013)
11 cert. denied, 134 S. Ct. 986 (2014) (citing *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787
12 (1994)). Further, California appellate courts have declined to follow *Vavasour*. *See Fire Ins.*
13 *Exch. v. Superior Court*, 181 Cal. App. 4th 388, 395 (2010) ("…any suggestion in *Vavasour* that
14 the harm occasioned by intentional conduct may constitute an accident when the person engaged
15 in the conduct is unaware of its wrongful character is contrary to the holdings of our state
16 courts."); *Urquhart v. Liberty Mut. Fire Ins. Co.*, No. B204044, 2008 WL 3892488, at *4 (Cal.
17 Ct. App. Aug. 25, 2008) ("The *Vavasour* court's suggestion that the harm occasioned by
18 intentional conduct may constitute an accident when the person engaged in the conduct is
19 unaware of its wrongful character is contrary to the holdings of our state courts."); *Collin v. Am.*
20 *Empire Ins. Co.*, 21 Cal. App. 4th 787, 811-12 (1994) ("The only California case failing to
21 recognize [the] principle [that intentional conduct cannot be an accident] is *Allstate Ins. Co. v.*
22 *Vavasour*; significantly, the author of that opinion promptly issued a new ruling in *Bailey v. State*
23 *Farm* which reaffirms the principle adopted in every other California decision) (internal citations
24 omitted).

25    Given the weight of case law against the *Vavasour* holding, the Court declines to follow
26 that holding. An accident occurs where "some additional, unexpected, independent, and
27 unforeseen happening occurs that produces the damage." *Merced Mutual Insurance Company v.*
28 *Mendez,* 213 Cal. App. 3d 41, 50 (1989). That is to say, "an 'accident' exists when any aspect in

the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." *Id.* Other than a possible mistake as to what property interest the third-party had in the roadway, Plaintiff does not identify any activities in the FAC that constitute an "unexpected, independent, and unforeseen happening," i.e. an "accident" causing property damage. Therefore, Plaintiff does not identify a basis for Coverage A to apply.

B. Coverage B

Coverage B of the policy states in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> …
>
> 14. Personal and advertising injury means injury ... arising out of one or more of the following offenses …
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

(ECF No 2-1 at 163, 172.)

Plaintiff argues that because there are allegations of trespass onto the third-party's land and loss of use of tangible property, the underlying suit is covered under Coverage B. Specifically, the complaint in the third-party suit alleges that Plaintiff entered onto the roadway, invaded the third-party's right to use the roadway, and excluded the third-party from using it. (ECF No. 2-2 at 12–13, 17, 20, 49–51.)

In opposition, Defendant first claims that under *Mirpad v. California Ins. Guar. Ass'n.*, this clause only applies to natural persons. 132 Cal. App. 4th 1058, 1071, 1074 (2005). While this assertion is correct, the third-party action is brought by individuals in addition to the Jameson Beach Property Owners' Association. Thus, coverage is not precluded on these grounds.

Next, Defendant correctly argues that if, in the underlying case, the third-party only possesses an easement, then the injury is not covered under the policy because "an easement is a nonpossessory interest in the land of another that gives its owner the right to use the land of

9

another." *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871 (Cal. 2001) (internal quotation marks omitted). "Under California law, the clause 'invasion of the right of private occupancy' requires interference with an enforceable possessory interest in real property and not just an interference with the use or enjoyment of real property." *Evergrow Indus. Co. v. Travelers Ins. Co.*, 37 F. App'x 300, 301–02 (9th Cir. 2002) (citing *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal. App. 4th 1252 (Ct. App. 1997)). Therefore, an interference with an easement does not amount to an invasion of the third-parties' "right to private occupancy," under Coverage B. *Id.* at 302.

As stated above, the third party also alleges that it owns the roadway that Plaintiff is charged in the third-party complaint with using and/or trespassing upon. (ECF No. 9-1 at 18.) Defendant argues that even in this situation, the policy would not apply, because Plaintiff would not be the "owner, landlord or lessor" of the premises that was invaded. (ECF No. 9-1 at 18.) That is, Plaintiff would not be the "owner, landlord, or lessor" invading the roadway. The relevant part of Coverage B states that coverage applies when there occurs:

> [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

Some courts have found the language of this provision ambiguous: whether the "wrongful eviction from, wrongful entry into, or invasion" has to to be committed by the owner, or whether the "private occupancy" has to be committed by the owner. *See Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 893-94 (E.D. Cal. 2010) (collecting cases discussing a possible ambiguity). *See New Castle Cty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 174 F.3d 338, 348 (3d Cir. 1999) ("it is plain that 'by or on behalf of' modifies 'that a person occupies,' the language that directly precedes it, and not the 'wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy' language that commences [this provision]").

However, when interpreting a policy provision, this Court must give its term their ordinary and popular sense unless used in a technical or otherwise special way, and terms must be interpreted in context and with relation to one another. *See Palmer v. Truck Ins. Exchange*, 21

10

Cal. 4th 1109, 1115 (1999). The Court notes that, in 1998, the word "committed" was added to CGL forms to "clarify that the 'wrongful eviction' offense must be 'committed by or on behalf of the owner, landlord or lessor.'" H. Walter Croskey, et al. California Practice Guide: Insurance Litigation Ch. 7C-C (Aug. 2015). *See Mirpad*, 132 Cal. App. 4th at 1064, n. 3. One would not "commit" the private occupancy of a premises, while one would "commit" the act of wrongful entry, eviction, or invasion. Under its ordinary and popular reading, the owner of the roadway would have to commit a wrongful invasion of the right of private occupancy of the roadway in order for Coverage B to apply. However, if the third-party complainant is stating that it – the Jameson Beach Property Owners' Association and others – and *not* Plaintiff, owns the roadway, then Plaintiff is not the owner committing the wrongful invasion. Therefore, Coverage B would not apply in this scenario.

Finally, Plaintiff asserts that there is a possibility that both the third-party and Plaintiff jointly own the roadway. Plaintiff argues that the third-party complaint "open[s] the door to the possibility that the evidence will establish that plaintiffs share an interest in real property with the United States Forest Service and under the United States Forest Service's license, [Plaintiff] interfered with the [third-party's] ownership interest." However, Plaintiff does not support this contention.[2] As such, the Court finds that Plaintiff has failed to allege sufficient facts to establish coverage under Coverage B.

### C. Liquor Liability Coverage

The Liquor Liability Coverage gives Defendant the "right and duty to defend against any 'suit'" seeking damages "because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (ECF No. 2-1 at 203.) Generally, Plaintiff avers that it is entitled to a defense under the liquor liability coverage based on "the allegations in the Third Party Action of allegedly drunk patrons invading the [third-party's] property." (ECF No 2 at ¶ 29(e).) The offending activities

---

[2] Plaintiff cites a number of paragraphs in the third-party's underlying complaint and the FAC, but block-quotes the FAC's ¶ 129; that quotation says nothing about joint title to the roadway. If an amended complaint and/or opposition is filed, Plaintiff should clearly identify which exhibits and/or portions of the third-party FAC show that joint title is a possibility so that the Court is not called upon to hunt through the supporting exhibits.

include CRR's securing four alcohol and beverage licenses; creating a "party-oriented spot" for resort-goers; having insufficient and untrained staff to monitor drunk people; servers at the Beacon bar over-serving customers; the Beacon Bar playing loud music; CRR's promoting events that include discount liquor; and generally, drunk people trespassing onto the third-party plaintiff's property and/or creating a nuisance.³ (*See* Decl.'s of Ronald Saxon, Bryan Morrison, Kim McCarl, ECF No. 2-2 at 144–84.)

As argued by Defendant, under Cal. Bus. & Prof. Code § 25602(b):

> No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage.

That is to say "the consumption of alcoholic beverages rather than the serving of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person." *Cantwell v. Peppermill, Inc.*, 25 Cal. App. 4th 1797, 1802 (1994). "When properly applied, § 25602 immunity means that [the insured] cannot be liable 'by reason of the selling, serving, or furnishing of any alcoholic beverage,' which is the requirement for indemnity under the [Liquor Liability Coverage]." *N. E. Ins. Co. v. Masonmar, Inc.*, No. 1:13-CV-364 AWI SAB, 2014 WL 1247604, at *3 (E.D. Cal. Mar. 25, 2014). The purpose of section 25602 is to "reaffirm 'prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person.'" *Cantwell*, 25 Cal. App. 4th at 1802 (citing § 25602(c)).

There is an exception to the civil liability immunity conferred on furnishers of alcohol under Cal. Bus. & Prof. Code § 25602(b), which is that liability might apply if the seller of alcohol sells to an obviously intoxicated minor. Cal. Bus. & Prof. Code § 25602.1. *See Ruiz v. Safeway, Inc.*, 209 Cal. App. 4th 1455, 1459–60 (2012) (the "one" exception to immunity under section 25602 is providing alcohol to an intoxicated minor); *Masonmar*, 2014 WL 1247604, at *3 (the obviously intoxicated minor exception is the "sole" exception to immunity under section

---

³ It appears that any liability stemming from CRR's Beacon Bar and Grill, specifically, is excluded from coverage. (*See* ECF No. 2-1 at 179.)

25602); *Elizarraras v. L.A. Private Sec. Servs., Inc.*, 108 Cal. App. 4th 237, 243 (2003) ("[t]he statutory exception of section 25602.1 is a narrow one that is construed strictly").

Plaintiff argues: "With no discovery undertaken to date, [Defendant] simply cannot assert with certainty that the inebriates referenced in the complaint were *not* minors. It would not be surprising (or unexpected) to find that 17–20 year old youths were drinking and horsing around on plaintiffs' docks. The point is, [Defendant] cannot show that the inebriated individuals complained about in the [third-party action] were *not* minors. There always remains the possibility they are." (ECF No. 12 at 21.)

However, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995). "If [the insurer] has made an informed decision on the basis of the third party complaint and the extrinsic facts *known* to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit." *Id.*

Although it is possible or even probable that drunk minors, at some point, trespassed onto the third-party's property or caused other damage, Plaintiff cites no case finding a duty to defend under this particular Liquor Liability Coverage based on this speculative set of circumstances. Plaintiff's moving papers do not identify any specific allegation in the attached declarations or in the third-party FAC in which Defendant furnished alcohol to an intoxicated minor, resulting in damages to the third party.

Plaintiff also argues generally that drunk patrons of CRR caused third-party property damage, as alleged in the FAC. (ECF No. 12 at 16–17.) However, Plaintiff does not refute Defendant's argument that the only way in which CRR could be liable is under the "obviously intoxicated minor" exception to Cal. Bus. & Prof. Code § 25602(b). That is, Plaintiff does not identify why the "sweeping civil immunity" afforded to furnishers of alcohol does not remove Defendant's duty to defend in this case, as Defendant argues. *Elizarraras v. L.A. Private Sec. Servs., Inc.*, 108 Cal. App. 4th at 243.

**II. Second and Third Causes of Action: Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

Because Plaintiff has not establish a basis for coverage under the CGL provisions as discussed herein, Plaintiff has also not established a basis to bring a claim for breach of contract and breach of the covenant of good faith and fair dealing. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) ("It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer").[4]

### CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is GRANTED as to all Counts. Because it is possible that Plaintiff may submit additional authorities and arguments, and/or plead other facts that would withstand a motion to dismiss, Plaintiff is given LEAVE TO AMEND as to all Counts.

An amended complaint may be filed and served within 21 days of entry of this Order. Defendant may file a responsive pleading within 21 days of service of the amended complaint.

Dated:  December 8, 2015

_____
Troy L. Nunley
United States District Judge

---

[4] The Court notes Plaintiff's assertion that three other insurance providers have agreed to defend Plaintiff in the third party action, under virtually identical policies.  (ECF No. 12 at 23.)